VAN NESS, J., dissented.

Judgment for the defendant.

———◦※◦———

### VAN BRUNT AND ANOTHER *against* SCHENCK.

When a vessel has been seized by an officer of the customs, who, after the seizure, commits an abuse of the authority vested in him, and the vessel is then acquitted in the district court, but a certificate of probable cause given, the officer, although liable for the particular act of abuse, is protected, by the certificate, from being made a trespasser, *ab initio*.
The abuse of an authority given by law, makes the abuser a trespasser *ab initio*, but not the abuse of an authority in fact.

THIS was an action of trespass for seizing and taking a schooner called the *Nancy*, against the defendant, who is surveyor of the port of *New-York*.  At a former trial of this cause a verdict had been found for the plaintiff, which, in *August* term, 1814, was set aside, and a new trial granted, (See 11 *Johns. Rep.* 377.) and the cause was again brought to trial at the *New-York* sittings, in *April*, 1814, before Mr. J. *Van Ness*.
It was stated in the libel filed in the district court of the *United States* against the schooner *Nancy*, that the defendant, on the 6th of *October*, 1809, seized the vessel as forfeited to the use of the *United States*.  It was proved, on the part of the plaintiff, that while the *Nancy* was so under seizure, the defendant admitted that he had used the vessel in transporting his furniture, from his house at *Hell-Gate* to *New-York*, and offered to pay the plaintiffs for the use of her, but they declined accepting any payment for the use of her, and referred the defendant to their attorney.  It was also proved that the witness personally attended to the conducting of the trial of the suit in the district court.

It was proved, on the part of the defendant, that all seizures, by whomsoever made, are stated in the libel to be made by the surveyor, who had an interest in them, and that the defendant was the only officer who took an active part in preparing the causes for trial.  *William Van Beuren*, a witness for the

defendant, testified that he seized the *Nancy* for a breach of the embargo laws, and immediately reported the seizure to the defendant, who approved of what he had done. The witness did not recollect whether he had any particular instructions from the defendant to seize the vessel in question, but he had a general order to seize all suspicious vessels. The witness also stated that the defendant applied to him to procure a vessel to bring his furniture from his country seat to *New-York*, and that the witness not being able to procure any vessel for that purpose, urged the defendant to take the schooner and pay the owners for the use of her: that the defendant at first declined, but afterwards assented to it; and the witness went in the schooner to the country seat of the defendant, and returned with the schooner in the afternoon of the same day in which she was taken away.

It appeared from the proceedings in the district court, against the schooner *Nancy*, that on the 5th of *December*, 1809, an order was made, by consent in the cause, that the vessel should be sold by the marshal, and the proceeds paid into court; and that the cause having been heard in the district court, the court, afterwards, on the 8th of *January*, 1810, decreed that the libel should be dismissed, that there was probable cause of seizure, and that the amount of the sale of the vessel, after deducting costs, should be paid to the claimants. The vessel was sold by the marshal for 320 dollars, and the sum of 122 dollars 75 cents was paid to the claimants in pursuance of the order of the court.

When the cause was about to be submitted to the jury, the judge stated that, under the decision of the court in this cause, on the motion for a new trial, he should feel himself bound to charge the jury against the plaintiffs' right to recover: the plaintiffs then submitted to a nonsuit, with liberty to move the court o set it aside.

The cause was argued by *Wells* and *Brinckerhoff*, for the plaintiffs, and by *Baldwin*, for the defendant.

THOMPSON, Ch. J., delivered the opinion of the court. This case, as it now appears before the court, differs essentially from the former. (11 *Johns. Rep.* 377.) *Van Beuren*, who, in fact, made the seizure, testifies, that he had general orders to seize all sus-

picious vessels. From whom these orders were received he does not state. But he says he reported the seizure to the defendant, who approved of what he had done. This was a complete ratification and adoption of the act of seizure, and puts the defendant in the same situation as if he himself had made the seizure, and the question then arises, whether the subsequent use of the vessel, by the defendant, made him such a trespasser, *ab initio,* as to make him responsible for the full value of the schooner at the time of seizure. The decision of this question will, I think, depend entirely upon the legal effect and operation of the certificate of reasonable cause of seizure, given on the acquittal of the vessel. Independently of this certificate, the case would fall within the rule, that the abuse of an *authority given by law* makes the abuser a trespasser, *ab initio.* The reason of this rule, and why it does not apply equally to an abuse of *an authority in fact,* does not seem very satisfactorily explained in the books. It is sometimes said that the law intends from the subsequent tortious act, that there was, from the beginning, a design of being guilty of an abuse of the authority. At other times, it is made to rest upon the general reasonableness of the rule, that where the law has given an authority it should, in order to secure such persons as are the objects of the authority from the abuse thereof, make every thing done, void, when it is abused, and leave the abuser in the same situation as if he had done every thing without any authority. But whatever may be the reason of the rule, it is founded, in some measure, in fiction, and this fiction must not be made to work injustice in the face of the express provision of the act of congress (*March 2, 1799,*) which declares, that where there is a certificate of reasonable cause of seizure, the person who made the seizure, or the prosecutor, shall not be liable to action, suit, or judgment, on *account of such seizure.* This certificate does not shield the person making the seizure from responsibility, for damages which may be occasioned by any subsequent abuse of his authority. It only goes to protect him from an action on account of the seizure. That is, if there was reasonable cause for the seizure, the person making it shall not, for such act, be deemed, in any manner, responsible. But, to make the defendant a trespassor, *ab initio,* is making him responsible for the act of seizure, for which the statute declares he shall not be answerable. This construction gives

full force and effect to the certificate of reasonable cause, and still makes the seizing officers liable for all injury occasioned by an abuse of their authority. Any other construction renders this certificate a nullity. The seizing officer is, by this certificate, put in the situation of a person who is guilty of an abuse of an *authority in fact*, who does not thereby become a trespasser, *ab initio*, but is liable to make satisfaction to the owner of the property for the abuse of his authority. The object which this act of congress had in view is very analogous to the one provided for by our statute as to irregular distresses, (1 *N. R. L.* 436.,) which declares, that when any distress shall be made for rent justly due, and any irregularity or unlawful act shall be afterwards done, the party making it shall not be deemed a tresspasser *ab initio*, but the party aggrieved may recover full satisfaction for the special damages sustained, and no more, in an action of tresspass on the case.

To make the defendant responsible, for all damages, which the abuse of his authority has occasioned, and no more, will be doing ample justice to both parties, and affording that protection to public officers contemplated by the act of congress. But to make the defendant liable to the full value of the vessel at the time of seizure, by affiction of law, which, may, perhaps, make him a trespasser *ab initio*, would be carrying the fiction farther than reason and justice would warrant. I should incline to think a special action on the case, for the actual damage sustained by the use of the schooner, would lie, and would be the fit and appropriate action. The reasonable cause for the seizure, which the certificate shows, ought to be considered as making that act lawful, and the injury to the plaintiffs is, therefore, mediate and consequential, and so not a proper case for an action of trespass.

There is another fact disclosed in this case which did not appear in the former, and which would seem to furnish an answer to the claim set up in this action, for the value of the schooner. By an order of the district court, made with the consent of the proctor for the claimants in that court, (and who are the plaintiffs here,) the vessel, was sold, and the money paid into court, to abide the event of the suit. this money, by the decree dismissing the libel filed in the cause, was ordered to be paid over to the claimants, which has been done, as

appears by the receipt of their proctor, bearing date the 7th of January, 1810. This ought to be considered an affirmance of the proceedings, and an election, to take that which, by the consent of parties, was made the substitute for the vessel. (20 *Vin. Ab.* 528. pl. 4.) Independently, however, of this circumstance, I think the defendant cannot be made a trespasser, *ab initio,* but is only liable in a special action on the case, for whatever damage the plaintiffs have sustained, by the use of the vessel by the defendant, contrary to his duty as a public officer ; and that the motion to set aside the nonsuit must, accordingly, be denied.

VAN NESS, J., dissented.

Motion denied.