CITED in *Haslack* v. *Mayers*, 2 *Dutch.* 291; *Denny* v. *Quintin*, 4 *Dutch.* 136; *Brown* v. *Fitch*, 4 *Vr.* 422.

---

## CORNELIUS WINTER v. JAMES PETERSON.

1. In trespass for cutting a tree in the highway, tried before a justice, a deed may be admitted in evidence, to show the boundary line of the adjoining farm.

2. Evidence is admissible to show that the overseer, in cutting the tree, acted from improper motives—did the act in bad faith.

3. The presumption of law is, if nothing appears to the contrary, that a conveyance of land bounded on a highway, carries with it the fee to the centre of the road.

4. The trees in a highway belong to the owners of the fee.

5. The public have the right of free passage, and the overseer may remove obstructions, but beyond this the rights of the owner of the soil remain to him.

6. If an overseer cuts down a tree which *does not* obstruct or interfere with the public use of the road, he is a trespasser.

7. If he does so maliciously, he is liable to exemplary damages.

8. Whether a tree cut down by the overseer did obstruct the public in the use of the road, or was cut maliciously, are questions for the jury.

---

Argued before OGDEN and POTTS, Justices, by Mr. *Woodruff* for plaintiff in *certiorari*, and Mr. *Tuttle* for defendant.

POTTS, J. This was an action of trespass, brought originally in a justice's court, by Peterson against Winter, for cutting down a tree standing in the public road. The case was tried without a jury, and a judgment given against the defendant for twenty dollars damages and costs. The defendant appealed, and the trial before the pleas resulted in a judgment for the same amount. From the state of the

case agreed upon, it appears that Winter was, at the time he cut the tree, the legal overseer of the road in which the tree stood ; the tree was a thrifty chestnut, eight and a half inches in diameter, and between thirty and forty feet high ; the branches were twelve feet long, but trimmed up ten feet from the ground. It stood about one foot from the fence of Peterson's farm, two hundred yards from his house. The road was thirty-two feet wide ; the distance from the tree to the centre of the road was fourteen feet eleven inches, and from the tree to the outside of the wagon track was nine feet six inches, the branches, therefore, extending partly over the road, but all the plaintiff's witnesses testified, that in their opinion it was no obstruction to travellers, and some of them testified that its branches were too high to interfere with the passage of a load of hay. The stump of the tree left standing, was eighteen inches high ; stones large enough to obstruct the travel were left, some of them further in the road than this stump ; and other trees, one near Winter's own barn, as far or further in the road than this, were left standing by the overseer, though he did cut the trees of some other persons out of the road at the same time ; and some evidence was admitted to prove that Winter and Peterson were not on good terms, in order to show that the act was done maliciously, and from bad motives.

Several reasons were urged by the counsel for the plaintiff in *certiorari*, why the judgment of the Court of Common Pleas should be reversed. They may be embraced in four :

1. The admission of Peterson's deed to show the boundaries of his farm, and that it included the part of the road in which the tree stood.

2. The admission of evidence to show that the overseer left trees and stones in the road, and that he and Peterson were not on good terms, and the refusal of the court to receive evidence of the *particulars* of the difficulties between them.

3. That the court refused to non-suit the appellee below.

4. That the judgment was for exemplary damages.

These grounds assigned for error, will be examined in their order.

I. As to the admission of the deed. There was no error in this. The object of the evidence was not to show *title*, but the mere *possession*, which was all that was necessary in this action; and as the *locus in quo* was occupied as a public road, the production of the deed for the purpose of showing that the boundaries of the farm of which the appellee was in possession, embraced it, was proper. Besides this, there was other evidence that the tree stood on Peterson's land, and, therefore, if the deed had been improperly admitted, we could not reverse for this cause.

II. Evidence was properly admitted to show that the overseer acted from improper motives; that the act complained of was done maliciously, and was not a mere error in judgment as to his official duty. Where a public ministerial officer acts *mala fide*, as well as without authority of law, he becomes a trespasser *ab initio*. *Ward* v. *Folly*, 2 *Southard*, 485; *Van Brunt* v. *Schenck*, 13 *Johns*. 414; *Gardner* v. *Campbell*, 15 *Johns*. 401; *Campbell* v. *Stakes*, 2 *Wend*. 137; *Allen* v. *Crofoot*, 5 *Wend*. 506. Proof that the overseer left other trees, &c., in the road, and that he and Peterson were not on friendly terms, was competent upon the question of bad faith; and the court did not err in refusing to permit the appellant to go into the history of the difficulties out of which the bad feeling between the parties originated. The state of feeling between them was the only matter material—how it was caused was of no consequence.

III. The motion to non-suit, raised the question whether the appellee, who, upon the trial of the appeal, was bound to make out a legal cause of action, had done so; and the counsel of the plaintiff in *certiorari* now insists, that taking the case as made by the appellee below, the fact that Winter committed the supposed trespass while acting in the

capacity of overseer of the road, is, in itself, a sufficient justification. Let us see how this is.

The plaintiff below, Peterson, occupied the farm adjacent to the public road. The inference or presumption of law is, that a conveyance of land bounded on a public highway carries with it the fee to the centre of the road, as part and parcel of the grant (3 *Kent's Com.* 432 ; *Peck* v. *Smith,* 1 *Conn. R.* 103), unless by the terms of the description, the road is necessarily excluded, or at least something appears to rebut the presumption. *Tyler* v. *Hammond,* 11 *Pick.* 213, and cases there cited. Besides, in this case, I think the fair construction of the words of description in the deed carried the line of the Peterson farm to the middle of the road ; the line is described as commencing to run "along the middle of the road," and as running "along the said road," for the two succeeding courses.

Then, the possession of the farm was possession of so much of the road as lay within its boundaries. The law has always been so. "The king has nothing but the passage for himself and his people ; the freehold and all the profits belong to the owner of the soil." 1 *Roll's Abr.* 392, *Letter B. pl.* 1, 2. So do all the trees upon it, and mines under it ; the owner may carry water pipes under it ; he may have ejectments as well as trespass. *Goodtitle* v. *Alker,* 1 *Burrowes,* 143. The owner of the soil may have trespass against any person who digs up the soil, or cuts down any trees growing on the side of the road, and left there for shade or ornament, (3 *Kent's Com.* 433,) for the freehold remains, subject only to the easement or right of passage in the public. *Fairfield* v. *Williams,* 4 *Mass.* 427 ; *Perley* v. *Chandler,* 6 *Mass.* 454 ; *Stackpole* v. *Healey,* 16 *Mass.* 33 ; *U. S.* v. *Harris,* 1 *Sumner,* 21, 37 ; *Adams* v. *Emerson,* 6 *Pick.* 56.

In New Hampshire it is held that the proper officer may cut down trees standing in the public highway, only *so far as is necessary* to do so for the purpose of the easement or right of passage, and the wood belongs to the owner of the soil. *Make-peace* v. *Worden,* 1 *N. Hamp.* 16. In South

Winter v. Peterson.

Carolina, trees reserved for ornament, or cultivated for use, have always been respected as exempted from the operation of their act of 1788, authorizing the commissioners of roads to cut down timber, wood, &c., in or near roads. *Eaves* v. *Terry*, 4 *McCord*, 125.

There is nothing in our road act which renders these general principles inapplicable here. The 21*st sec. Rev. Stat.* 621, makes it the duty of the overseers "to open, *clear out*, make, work, amend, repair and keep in good order the highways within their respective limits and divisions." The 29th sec. provides "that no tree shall be girdled or killed *on the highways;*" and the 52d sec. expressly prohibits the overseer from "cutting down or injuring any fruit, shade or ornamental tree which may have been or shall be planted or set out by the owner or possessor of any lands adjoining any highway, and which shall not extend more than seven feet from the line of the road, toward the centre of the same," without an order from the township committee. Those trees are expressly recognized as being in the public highways, and are forbidden to be girdled or killed. To "clear out" a highway, means nothing more than to clear it out for all the purposes to which it is dedicated. The public have the easement, the right of free passage; *that* they have a right to perfect and maintain. All obstructions to it may lawfully be removed; but beyond this the rights of the owner of the soil remain unimpaired. Nothing is more common every where in our villages and agricultural districts, than for the owners and occupiers of the soil to have fruit, shade and ornamental trees along the line of the public roads, sometimes in the line of the road, sometimes on each side of the line; and to give the overseer of every section of road the right to cut these down arbitrarily, and according as whim or caprice may dictate, without regard to public necessity, would be to clothe him with a power which might often be abused, and which a reasonable construction of the statute does not warrant.

If the tree in question was an obstruction to the free en-

joyment of the public right—if it interfered with the travel —if it injured the road, the overseer had authority to cut it down. But not otherwise. And if he not only did it without authority, but maliciously, he was liable to exemplary damages. These were questions for the court, no jury being called. They were questions of fact, in reference to which there was some evidence, and we cannot interfere with the judgment upon these facts.

This disposes also of the 4th ground assigned for error.

Let the judgment be affirmed.

OGDEN, J., concurred.